**UNITED STATES DISTRICT COURT**

**DISTRICT OF ALASKA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) <br> ex rel. THOMAS A. BERG, TIMOTHY ) <br> A. BERG, RYNE J. LINEHAN, NAYER ) <br> M. MAHOUD, and STANLEY E. ) <br> SMITH, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> HONEYWELL INTERNATIONAL, ) <br> INC., and HONEYWELL, INC. ) <br> ) <br> Defendants. ) | | 3:07-cv-00215 JWS <br><br> ORDER AND OPINION <br><br> [Re: Motions at Dockets 72 and 76] |

## I. MOTION PRESENTED

At docket 72, defendants Honeywell International, Inc. and Honeywell, Inc. ("Honeywell") filed a renewed motion to dismiss plaintiffs' first amended complaint with prejudice pursuant to Federal Rules of Civil Procedure 9(b) or, in the alternative, a motion for a more definitive statement pursuant to Rule 12(e). Honeywell's motion specifically references and incorporates the briefing and supporting documentation related to its initial motion to dismiss at docket 42. At docket 75, *qui tam* plaintiffs Thomas Berg, Timothy Berg, Ryne Linehan, Nayer Mahmoud, and Stanley Smith ("relators") filed an opposition. At docket 76, relators filed a conditional motion for leave to file a second amended complaint, with the proposed complaint attached at docket 76-

1.  Honeywell filed a reply to its motion to dismiss at docket 78 and a response in opposition to relators' request to file a second amended complaint at docket 77.  Oral argument was not requested, and it would not assist the court.

## **II.  BACKGROUND**[1]

In August 1997, the U.S. Army Engineering and Support Center (the "Center") in Huntsville, Alabama, issued a 25-year Energy Savings Performance Contract (the "ESPC") to Honeywell pursuant to 42 U.S.C. § 8287(a).[2]  Under the ESPC, annual payments by the government to contractors, "may not exceed the amount that the agency would have paid for utilities without [the ESPC] (as estimated through the procedures developed pursuant to this section) during contract years."[3]  Pursuant to § 8287(a)(2)(B), the ESPC "shall provide for a guarantee of savings to the agency, and shall establish payment schedules reflecting such guarantee, taking into account any capital costs under the contract."

Under the ESPC with Honeywell, the Center issued Task Order 007 on July 28, 2000, for the installation of energy-efficient lighting at Fort Richardson and Fort Wainwright, Alaska.  It issued Task Orders 008 and 009 in September of 2000 and December of 2000 respectively for partial decentralization of the Fort Richardson Central Heating and Power Plant (CHPP), and conversion from the CHPP power supply to commercial natural gas and electricity.[4]  Under Task Order 008, about 80 non-housing buildings were to be converted from the CHPP power supply to commercial

---

[1]The facts are taken from the first amended complaint at docket 10, as well as the contract, task orders, and audit reports that the complaint references and relies upon.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[A] court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. . . . If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiffs' complaint necessarily relies' on them." (internal citations omitted)).

[2]The ESPC is at doc. 44-2.

[3]42 U.S.C. § 8287(a)(2)(B).

[4]Task Order 008 is at doc. 44-3 and Task Order 009 is at doc. 44-4.

natural gas and electricity purchased from local suppliers. Under Task Order 009 about 190 buildings, mostly housing units, were to be converted from CHPP power supply to commercial natural gas. Individual natural gas-fired boilers and piping systems were installed in these buildings pursuant to the task orders. Eventually Task Orders 008 and 009 were merged by a contract modification dated August 13, 2003, and thereafter both orders were referred to as Task Order 008.

As part of the ESPC, Honeywell was required to establish a baseline of pre-conversion energy costs against which energy savings could be measured to establish the feasibility of the project ("baseline"). The ESPC provided that the government would provide Honeywell with the historical data needed to determine the baseline.[5] After Honeywell calculated the baseline and used it to estimate the energy costs savings resulting from the Fort Richardson project, it was required to provide the government with all assumptions, calculations, and supporting documentation it used to derive the energy cost savings estimate so that the government could verify the calculations.[6] The task orders stated that "payment due to Honeywell will be limited to the actual savings generated."[7] The ESPC contract provided that if the project does not generate savings, "then [Honeywell] is due no payment."[8]

The ESPC and Task Orders 008 and 009 also contained an energy savings guarantee and a contractual protocol for dealing with any "shortfalls" in the projected savings that may occur after the project's implementation. Specifically, Task Orders 008 and 009 require the following:

> In the event that the total energy savings for the selected buildings are less than the amount identified, Honeywell will develop an action plan to determine the reasons for the deviation ... in the event that this action plan does not improve the energy savings and the discrepancy is found to be the fault of Honeywell, and not the Government, Honeywell reserves the right, at

---

[5] Doc. 44-2 at p.15.

[6] Doc. 44-2 at p.20.

[7] Doc. 10 at ¶ 21; Doc. 44-4 at p. 9.

[8] Doc. 10 at ¶ 21; Doc. 44-2 at p. 13.

its expense, to perform additional measures to correct the shortfall. In this event, the Government would be under no obligation to Honeywell for the shortfall in savings. However, if the discrepancy is found to be the fault of the Government, Honeywell and the Government will negotiate a method of shortfall reconciliation.[9]

For the first year of the Fort Richardson project, Honeywell had estimated that the energy savings would be approximately $1.3 million. After completing the project installations, Honeywell issued periodic measurement and verifications reports ("M&V reports") required under § 8287(a)(2)(G) that monitored post-construction energy usage and savings. The M&V reports relied on the baseline energy calculation, but allowed adjustments to be made for such things as increased fuel costs and changes in square footage of the buildings at issue. When the figures were examined, there were no savings realized during the first year of the project.

From May to December 2003, the U.S. Army Audit Agency (AAA) published a three-part series of reports specifically discussing Task Orders 008 and 009 ("the audit reports").[10] The audit reports included a detailed description of the AAA's audit and Honeywell's miscalculations when estimating the project's energy savings. The audit reports concluded that Honeywell submitted incorrect baselines and cost-savings calculations for Task Orders 008 and 009, resulting in a shortfall of energy savings under the ESPC. Specifically, they indicated that Honeywell's baseline calculation was off by about $1.4 million, primarily because the estimate included the cost of purchasing power from a commercial source rather than the cost of generating power.[11] In addition to identifying errors Honeywell made in calculating the baseline, the audit reports concluded that "U.S. Army Garrison, Alaska personnel did not fully identify all historical costs associated with the baseline" and that the Army's omission of costs played a part

---

[9]Doc. 44-3 at pp.7-8; Doc. 44-4 at pp. 7-8.

[10]The May audit report is located at doc. 44-10. The July audit report is located at doc. 44-11. The December audit report is located at doc. 44-12 and 44-13.

[11]Doc. 44-10 at p. 10 ; Doc. 44-11 at p. 10.

in Honeywell's incorrect calculations of the operations and maintenance baseline.[12]  The audit reports concluded that the costs savings under the ESPC would not be sufficient to repay Honeywell for its investment in the project, and that the total projected shortfall over the life of the ESPC would be about $6.3 million, with an average annual shortfall of about $300,000.[13]

After the issuance of the audit reports that found Honeywell improperly calculated the baseline, Task Order 008 was renegotiated, with the parties agreeing to about 30 modifications.[13]  Based on relators proposed second amended complaint, Honeywell has received payments under the ESPC since 2004.[14]

In 2008, the relators filed a first amended complaint ("the complaint") under seal pursuant to 31 U.S.C. § 3730(b)(2), asserting claims against Honeywell under the qui tam provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730.  Relators Berg, Berg, Linehan, and Smith were employed at all relevant times by the Directorate of Public Works, Fort Richardson, Alaska.  Relator Mahmoud was employed as an Internal Review Officer, U.S. Army Alaska.  The first claim of the complaint alleges that Honeywell induced the government to award the ESPC through the "knowingly false calculation of baselines, the knowingly false guarantee of energy cost savings and the repeated and knowingly false guarantee of energy cost savings and the repeated and knowingly false submission of periodic M&V reports and other information" and has thereby knowingly presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1).  The second claim alleges that Honeywell violated 31 U.S.C. § 3729(a)(2)[15] by knowingly falsifying baseline calculations and falsifying measurement and verification reports in order to get false or fraudulent claims paid or

---

[12]Doc. 44-12 at p. 18.

[13]Doc. 44-11 at p. 12; Doc. 44-12 at p. 10.

[13]Doc. 10 at ¶ 26; Doc. 76-1 at ¶ 30.

[14]Doc. 76-2.

[15]The court assumes that relators cited § 3729(a)(2) in error and meant to cite § 3729(a)(1)(B).

approved and falsifying its M&V reporting to include recalculations that were not allowed. The proposed second amended complaint merges the claims and presents one FCA claim, alleging Honeywell violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting a false claim for payment or approval and 31 U.S.C. § 3729 (a)(1)(B) by knowingly making a false record or statement material to a false or fraudulent claim.

After the federal government declined to intervene in the action, the district court filed an order unsealing the complaint. At docket 42, defendants moved to dismiss relators' complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and 31 U.S.C. § 3730(e)(4), and for failure to plead fraud with particularity pursuant to Rule 9(b). The court granted the motion to dismiss for lack of subject matter jurisdiction at docket 61. Because the court concluded it lacked jurisdiction, it did not rule upon the alternative ground for dismissal under Rule 9(b). The Ninth Circuit Court of Appeals reversed the court's order, concluding that the court has jurisdiction. Neither the opinion nor the order of the Ninth Circuit mentioned Rule 9(b).

Honeywell filed the renewed motion to dismiss at docket 72, asking that the court dismiss the action based on Rule 9(b), and relators filed the motion to amend the complaint at docket 76, along with a copy of the proposed second amended complaint. Honeywell argues that relators should not be allow to amend the complaint as proposed because the proposed amendment would be futile. In the alternative, Honeywell requests, pursuant to Rule 12(e), that the court direct relators to serve and file a more definite statement of their claim.

### III. STANDARD OF REVIEW

The FCA is an anti-fraud statute, and thus a complaint brought under this statute must fulfill the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.[16] Under Rule 9(b), averments of fraud must be pleaded with particularity: "mere conclusory allegations of fraud are insufficient."[17] While malice,

---

[16] *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

[17] *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

intent, knowledge, and other conditions of a person's mind may be alleged generally, the circumstances constituting fraud must be specific.[18]  In other words, "the who, what, when, where, and how" of the alleged fraud must be set forth in the complaint.[19]  "'[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'"[20]  The purpose of this heightened pleading standard is to give the defendants notice to adequately defend against the allegations of fraud and "'to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'"[21]

A complaint alleging a FCA violation must also comply with Federal Rule of Civil Procedure 8(a) in that it must plead plausible allegations.[22]  "That is, the pleading must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'"[23]

## IV.  DISCUSSION

### A. Appropriateness of the renewed Rule 9(b) motion

Relators argue that the Ninth Circuit's reversal of the court's finding that it lacked subject matter jurisdiction strongly suggests the relators' complaint was sufficiently pled. The court disagrees.  The court's prior order at docket 61 dismissed relators' complaint without addressing Honeywell's Rule 9(b) arguments.  Once the court determined that it

---

[18]Fed. R. Civ. P. 9(b).

[19]*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations and quotations omitted).

[20]*Id.* (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

[21]*Bly-Magee*, 236 F.3d at 1018 (quoting *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

[22]*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

[23]*Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

lacked subject matter jurisdiction, the court declined to address Honeywell's alternative Rule 9(b) argument. Thus, there was no Rule 9(b) decision for the Ninth Circuit to review on appeal. The court concludes that the Ninth Circuit's silence with respect to the Rule 9(b) issue does not mean that it impliedly found the complaint sufficient. It did not explicitly or implicitly address Rule 9(b). Instead, it simply reversed the court's decision regarding the jurisdictional issues. Thus, the court retains the discretion to consider Honeywell's Rule 9(b) motion.

**B. Relators' complaint under Rule 9(b)**

The essential elements of a FCA claim are: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money . . . ."[24] "The FCA attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment."[25] "Evidence of an actual false claim is 'the *sine qua non* of a False Claims Act violation.'"[26]

Relators fail to allege that a false claim for payment was actually made, and their complaint does not set forth any particularities about Honeywell submitting fraudulent invoices. Instead, Relators' complaint focuses on allegations of Honeywell's allegedly fraudulent conduct in calculating the baseline. Relators allege that Honeywell tried to prevent a shortfall in energy savings and guarantee payment by purposefully manipulating the baseline calculations. But, even assuming Honeywell engaged in such knowing manipulation, there was still a shortfall at the outset, and Honeywell had no claim for payment at that time. The complaint alleges, with reference to the government's audit reports, that the project undertaken pursuant to Task Orders 008 and 009 generated no savings. As noted in the complaint, the ESPC and Task Orders 008 and 009 put the risk of not attaining the projected energy savings on Honeywell. If

---

[24] *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).

[25] Cafasso, 637 F.3d at 1055 (internal citations and quotation omitted).

[26] *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).

the project failed to generate savings, then Honeywell would not be entitled to payment. Indeed, the government's 2003 audit reports concluded that the costs savings were not going to be sufficient to repay Honeywell for its investment in the project. It follows that there could be no claim for payment, at least without some negotiation between Honeywell and the government. It was only after the renegotiation of Task Order 008 with the government's knowledge of the inaccurate baseline calculations and energy savings projections that Honeywell obtained payment. As noted above, the purpose of the FCA is not to impose liability for the underlying allegedly fraudulent activity or for the government's wrongful payment, but to impose liability for the claim for payment, which in this case is not alleged to be directly fraudulent.

Relators assert that any failure to set forth details about a specific fraudulent claim for payment does not make the complaint insufficiently pled because the basis for their claim against Honeywell is fraud in the inducement. Under a fraud in the inducement theory under the FCA, liability can be triggered when fraud is used to obtain a government contract, thereby inducing the government to pay more than it otherwise would have.[27] Thus, even if the contractor's subsequent claims for payment were not literally false, since they derived from the original fraudulent misrepresentations, they become actionable false claims.

Relators' fraud in the inducement theory is that Honeywell manipulated the baseline so that it could conclude that there would be sufficient energy savings for their proposed projects, and as a result the government issued task orders 008 and 009. They allege that Honeywell's initial calculations were lies and that, as a result of these lies, the government has been duped into continuing with Honeywell's projects and renegotiating the task orders, which has resulted in payment to Honeywell.

Even under relators' fraud-in-the-inducement theory, where an initial fraudulent act can taint later claims for payment, the court concludes that relators' complaint is insufficiently pled under Rule 9(b). An innocent or negligent mistake or scientific error

---

[27] *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Serv. Co.*, 491 F.3d 254, 259 (5th Cir. 2007) (discussing *United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943)).

does not constitute fraud under the FCA.[28] Anytime estimates are involved, there are certainly likely to be inaccuracies. As the Ninth Circuit has acknowledged, "bad math is not fraud" and proof of mistakes is not proof that there was fraud.[29] The requisite intent under an FCA claim is the knowing presentation of a claim that is known to be false: there has to be a lie involved.[30] And, under Rule 9(b), that lie must be pled with particularity. While the first amended complaint repeatedly states that the baseline was "knowingly" and "deliberately" miscalculated, there is no detail as to the "who, what, when, where, and how" of these miscalculations. The complaint contains quite a bit of detail about why the baseline would be purposefully manipulated; there is little detail about how the fraud was carried out.

Relators identify which numbers were off and by how much, but as noted above, "bad math is not fraud." Setting forth which numbers and measurements were wrong and simply using adjectives like "knowingly" or "deliberately" to describe those numbers and measurements does not satisfy the heightened pleading standard of Rule 9(b). While the complaint is rife with allegations that the calculations were knowingly changed to achieve a certain result, it does not contain specific facts regarding Honeywell's alleged fraudulent plan or conduct besides pointing out the incorrect numbers used and the resulting incorrect prediction.

Relators' complaint alleges that Honeywell managers and employees knew the proposed ESPC projects likely would not generate sufficient energy cost savings to pay for themselves. Relators would suggest that this fact shows Honeywell had motivation to manipulate the numbers to try and fake cost savings to get approval for the proposed projects. But as discussed above, if the projects did not generate sufficient energy savings, Honeywell would not get paid: Honeywell took on a risk of non-payment. Thus, alleging facts to show that Honeywell knew the savings might not actually come to

---

[28] *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1487 (9th Cir. 1996); *Wang v. FMC Corp.*, 975 F.2d 1412, 1420-21 (9th Cir. 1992).

[29] *Hagood,* 81 F.3d at 1487.

[30] *Id.*

fruition. Moreover, the complaint does not allege facts about how Honeywell managers and employees actually lied to get savings.

Given that the submission of a false claim for payment or approval is "the *sine qua non*" of an FCA claim and given that the complaint does not set forth any particulars about Honeywell submitting fraudulent invoices or having committed fraud to induce approval of the proposed projects and future payments, Rule 9(b) has not been satisfied.

**C. Proposed amendment**

Relators filed a conditional motion to file a second amended complaint at docket 76, with the proposed complaint filed at docket 76-1, and argue that they should be allowed to amend the complaint as proposed in order to correct any deficiencies. Rule 15 provides for a liberal amendment policy.[31] The decision to permit or deny a motion for leave to amend rests within the sound discretion of the trial court.[32] In deciding whether to grant leave to amend, courts generally consider the following factors: undue delay, bad faith by the moving party, prejudice to the opposing party, futility of amendment, and whether the party has previously amended his pleadings.[33] Honeywell argues that the court should not allow relators to amend the complaint because the proposed complaint is also insufficient and so the proposed amendment would be futile.

The proposed complaint provides more details about the "what" and "how" of the miscalculations involved in this case. The new allegations set forth a list of what was and what was not taken into account when Honeywell estimated its energy savings and indicate how those inclusions and omissions would affect the baseline. But, again, under the FCA bad math, bad data, and sloppy estimations do not constitute fraud.

---

[31] *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (noting the liberal amendment policy).

[32] *See DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 185-86 (9th Cir.1987) (citing *United States v. Webb,* 655 F.2d 977, 979 (9th Cir.1981)).

[33] *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir.1995).

Allegations of incorrect and imprecise estimates, even if there were many mistakes made, are not enough to adequately plead fraud, especially where, as in this case, the ESPC obligated the government to provide historical data necessary for the estimates and obligated Honeywell to provide all its analysis to the government for verification. Because the government collaborated with Honeywell and had the right to review and verify all calculations, alleging obvious problems with Honeywell's calculations does not adequately plead deceit sufficient to maintain an FCA claim.[34]

The 2003 audit reports detailed the errors that occurred and allocated responsibility between Honeywell and the government. Honeywell began getting paid in 2004, only after the problems with the energy saving projections came to light. Relators' complaint and proposed complaint suggest that relators believe the government should not have continued to negotiate with Honeywell after the miscalculations came to light but, as noted above, the purpose of the FCA is not to impose liability for the government's wrongful payment, but to impose liability for fraudulent claims for payment. Relators also argue that the government would not have renegotiated with Honeywell if it knew that Honeywell was engaging in fraud. That is doubtless true, but the amended complaint does not provide sufficient details setting forth the particulars of Honeywell's deceit. Given the specifics of the ESPC and the government's involvement, the numerous errors and problems with Honeywell's energy savings projections are not enough to adequately plead fraud. The proposed amendment is therefore futile.

## V.  CONCLUSION

Based on the preceding discussion, Honeywell's motion to dismiss relators' complaint pursuant to Rule 9(b) is HEREBY GRANTED. Relators' conditional motion

---

[34] *Laird*, 491 F.3d at 262-63 (recognizing that there is no FCA claim when the government and contractor have been working together to reach a common solution to a problem.)

for leave to amend is **HEREBY DENIED**.  The clerk is directed to enter judgment for defendant, and close this file.

DATED this 24th day of June 2013.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE